1  **MICHAEL A. MCCONNELL**
   Kelly, Hart & Hallman, LLP
2  201 Main Street, Suite 2500
   Fort Worth, TX 76102
3  Telephone: ((817) 878-3566
   Facsimile: (817) 878-9766
4



5  General Counsel for Colony Lodging, Inc.

6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                     **LOS ANGELES DIVISION**

11  In re:                          )   **Case No. 02:10-Bk-55925-VZ**
                                    )
12  Colony Lodging, Inc.            )   Chapter 11
                                    )
13         Debtor.                  )   **MOTION OF COLONY LODGING, INC.**
                                    )   **FOR ORDER APPROVING**
14                                  )   **COMPROMISE WITH PACIFIC**
                                    )   **MERCANTILE BANK PURSUANT TO**
15                                  )   **FEDERAL RULE BANKRUPTCY OF**
                                    )   **PROCEDURE 9019 ; DECLARATION OF**
16                                  )   **LEONARD ROSS**
                                    )
17                                  )   Date:   November 23, 2010
                                    )   Time:   11:00 a.m.
18                                  )   Judge:  Hon. Vincent P. Zurzolo
                                    )           Courtroom 1368
19                                  )           255 East Temple Street
                                    )           Los Angeles, CA 90012
20                                  )
                                    )
21

22         Colony Lodging, Inc. ("CLI", "Colony" or "Debtor"), and the Chapter 11 Debtor entities

23  listed below, hereby move the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy

24  Procedure (the "Bankruptcy Rules") for an order approving the settlement (the "Settlement")

25  reflected in the Settlement Agreement and Release (the "Settlement Agreement") attached hereto as

26  Exhibit "1" by and among Ross, Pacific Mercantile Bank ("PMB"), the Chapter 11 Debtor case of

27  Rossco Holdings, Inc. ("Rossco Holdings"), the Chapter 11 Debtor case of Leonard Ross ("Ross"),

28  the Chapter 11 Debtor case of Monte Nido Estates, LLC ("Monte Nido Estates"), the Chapter 11

Debtor case of WM Properties, Ltd. ("WM Properties"), and the following non-debtor entities:

Monte Nido Homes, LLC ("Monte Nido Homes"), Lodgeco Properties, Ltd. ("Lodgeco"), and

Rossco MP Properties Company LLC ("Rossco MP").

   Ross, Rossco Holdings, Colony, Monte Nido Estates, WM Properties, Monte Nido

Homes, and Lodgeco, are known herein as the "Ross Parties".

   In support of the motion ("Motion") [1], CLI respectfully represents as follows:

## I.

## INTRODUCTION

  1.  Ross, individually and as the Trustee of the Leonard M. Ross Revocable Trust

(the "Trust") is the ultimate owner of, and controls, multiple businesses that, among other things,

own, operate, and/or develop real property. PMB is a secured lender to some of them, holding

allegedly perfected liens in certain real property. Ross, the Trust, and Rossco Holdings are claimed

to be guarantors, or direct obligors, under each of PMB's loans. Ross Decl., Paragraph 2.

  2.  PMB, Ross, and certain of Ross's businesses have been involved in multiple

disputes concerning defaults under the loans. The Settlement seeks to resolve all of those ongoing

disputes on a final basis. The disputes have been costly to all of the parties. Since the businesses

defaulted on their obligations, PMB has incurred significant losses in the form of missed payments

and has incurred significant costs in exercising its remedies. The Ross Parties, in turn, have

incurred great expense in defending against PMB's actions and ultimately in seeking bankruptcy

protection for four of the businesses (i.e., Rossco Holdings, Colony, WM Properties, and Monte

Nido Estates). Ross Decl., Paragraph 3.

  3.  The Settlement will prevent further loss and will resolve the disputes in a

manner that will provide some benefit to each party. It will benefit Ross and the Debtors in a

number of ways, including: (a) allowing Ross, Rossco Holdings, Colony and Monte Nido Estates,

the opportunity to seek 1031 exchanges to minimize tax liability; (b) allowing WM Properties time

to seek refinancing; (c) minimizing and fixing PMB's claims against Rossco Holdings and PMB's

---

[1] Identical motions will be filed in each of the Colony, Monte Nido Estates, Rossco Holdings, and
WM Properties bankruptcy cases.  The other members of the Ross Parties are not involved with any
bankruptcy proceedings.

LA:280797.5

deficiency claim against Ross and the Trust as guarantors; (d) eliminating any deficiency claims against Rossco Holdings, Colony, WM Properties or Monte Nido Estates; and (e) allowing the Ross Parties to conserve time and expense and focus on other matters. It will also benefit PMB by allowing PMB to recover its collateral without further delay and costs.

4.        The Settlement should be approved. It is the product of arm's length negotiations and is in the best interests of the Debtors' estates.

## II.

## BACKGROUND

### A.    The Bankruptcy Proceedings

5.        On September 15, 2010 (the "Petition Date"), Ross filed a voluntary petition (the "Petition") seeking protection from his creditors under chapter 11 of the Bankruptcy Code. Ross Decl., Paragraph 4.

6.        Ross's individual petition followed the petitions of certain business entities that are owned and/or controlled by Ross and the Trust, including four that are parties to the Settlement, who are CLI, Monte Nido Estates, WM Properties, and Rossco Holdings (collectively the "Debtor Affiliates"). Between July 27 and August 2, 2010 each of the Debtor Affiliates filed chapter 11 bankruptcy proceedings before the United States District Court for the Western District of Texas (Waco Division) (the "Texas Court"). By order entered on October 12, 2010, the Texas Court transferred the venue for these cases to the Central District of California, Los Angeles Division. Ross Decl., Paragraph 5.

### B.    The Outstanding Obligations Being Settled

7.        The outstanding principal amount claimed by PMB the various outstanding obligations to PMB as of the Debtor Affiliates' bankruptcy petition dates is approximately $15.3 million. Ross Decl., Paragraph 6.

8.        The collateral securing the obligations is as follows:

a.        All of the real property and rents of CLI, including the Colony Apartments in College Station, TX (the "Colony Apartments"). The Colony Apartments are encumbered by a second lien

3

deed of trust and assignment of rents in favor of PMB. PMB claims that the amount due to it under the note secured by the second deed of trust is approximately $6.6 million, including principal, interest, late charges, and fees and costs as of October 25, 2010. It should also be noted that there exists a first lien deed of trust which secures an obligation in favor of Propel Financial Services, LLC in the approximate amount of $130,000 for the payment of property taxes that came due in 2009. There is further another $125,000, plus or minus, that will come due for 2010. The total secured indebtedness and potential tax claims against the Colony Apartments is therefore around $6.7 million (with a claimed per diem of $2,139.77). The Debtor does not believe that the present value of the property exceeds $6.7 million (net of commissions, costs, title fees and escrow fees). Ross Decl. Paragraph 7.

b.    Certain real property, consisting of 20 vacant lots, owned by Ross, Monte Nido Homes and Monte Nido Estates, located on the north and south side of Piuma Road, East of Cold Canyon Road, Calabasas CA 91302 (the "(Piuma) Calabasas, CA Lots"). The (Piuma) Calabasas, CA Lots are encumbered by first and second lien deeds of trust (signed by Rossco Holdings as borrower) in favor of PMB, Monte Nido Estates' only significant creditor. Ross Decl., Paragraph 10. The claimed liens are approximately $9 million; the value of the 20 lots is around $5 million, according to the appraisal attached as Exhibit "3". Since the individual estate executed a guarantee, there is an approximate $4 million contingent guarantee claim that could be placed against the individual estate. Ross Decl., Paragraph 7.

c.    Certain real property owned by Rossco MP, commonly known as 633 Para Grande Lane, Santa Barbara, CA 93108 (the "Santa Barbara Property"). The Santa Barbara Property is encumbered by a second lien deed of trust in favor of PMB. It is disputed as to whether or not the lien on the Santa Barbara Property should already have been reconveyed pursuant to PMB's foreclosure of certain property in Texas occupied by a Travelodge. Ross Decl., Paragraph 7.

LA:280797.5

d.      Certain real property owned by WM Properties, commonly known as 702 S. Fort Hood Street, Killen, Texas 76541, Bell County, Texas (the "Verizon Property"). The Verizon property is encumbered by a first deed of trust and an assignment of rents in favor of PMB in the amount of approximately $250,000, and a second deed of trust in the amount of approximately $300,000 in favor of RFF Family Partnership, L.P. The value of the real property is somewhat in excess of the two debts, but not to any great extent. Ross Decl., Paragraph 7.

9.      Ross does not presently believe that the collateral fully secures PMB's claims and that PMB will likely have a significant deficiency claim in excess of $750,000 (and perhaps as much as $4 million or more). Ross Decl., Paragraph 8.

### III.

### RELIEF REQUESTED

10.     By this Motion, CLI requests that the Court enter an order approving the Settlement memorialized in the Settlement Agreement.

11.     In addition, the Debtor requests that the Order contain the following additional language in order to comply with the tax-free exchange provisions of the Agreement: "The Court finds that, upon the conveyance to PMB of the Colony Apartments, and the (Piuma) Calabasas CA lots, all indebtedness and obligations deriving from or relating to those properties which may otherwise be owing to PMB shall be deemed satisfied and discharged in full." The reason for the additional provision relates to the fact that it is important that the income from the discharge of indebtedness exception under the Internal Revenue Code relating to the PMB (Piuma) Calabasas, CA Lots loans (which have a balance in excess of the fair market value of that property, i.e., the 20 Lots) is available to Debtors. This finding, which is consistent with the release language of the Settlement Agreement, is a necessary prerequisite. Nothing contained herein shall be deemed to affect the continuing obligations set forth in the Settlement Agreement. Ross Decl., Paragraph 9.

12.     A copy of the proposed order approving the Settlement (the "Order") is attached as Exhibit 2 hereto.

LA:280797.5

# IV.

## TERMS OF PROPOSED COMPROMISE AND SETTLEMENT

13.     Attached as Exhibit 1 is a copy of the Settlement Agreement executed by the

Ross Parties and PMB. The material terms may be summarized as follows:[2]

a.     <u>Transfer of Real Property.</u>  Within three (3) business days following the approval of the Settlement Agreement: (i) Ross, Monte Nido Estates, and Monte Nido Homes will provide or cause to be provided a deed or deeds in lieu of foreclosure to convey all of the (Piuma) Calabasas, CA Lots; and (ii) Colony will provide or cause to be provided a deed or deed in lieu of foreclosure to convey the Colony Apartment.

b.     <u>Payment of PMB's Lien on Verizon Property.</u>  No later than February 11, 2011, WM Properties will pay off the PMB loan secured by the Verizon Property. The payoff amount will include payment in cash of all principal, all interest at the non-default rate, costs, and all late fees. If WM Properties fails to make such a payment to PMB (or fails to make a monthly payment when due), PMB will automatically be deemed to have granted relief from stay without further Court order, Debtors will not contest PMB's efforts to realize upon the Verizon Property as collateral, and Debtors will provide PMB with access to all books and reporting relating to the Verizon Property.

c.     <u>Release of Liens on Santa Barbara Property.</u>  Upon delivery of the deeds or deeds in lieu of foreclosure on the Colony Apartments and (Piuma) Calabasas, CA Lots, PMB will release its liens on the Santa Barbara Property.

d.     <u>Deficiency Claim.</u>  Upon the occurrence of the delivery of the deeds or deeds in lieu of foreclosure on the Colony Apartments and (Piuma) Calabasas, CA Lots, PMB will be deemed to waive any and all amounts that remain unpaid other than a <u>single</u> deficiency claim that will be deemed to be an allowed general unsecured claim in the amount of $750,000 ("PMB's Deficiency Claim"). PMB's Deficiency Claim will be a joint and several liability of the Rossco Holdings and Ross bankruptcy estates. PMB will not be required to file a proof of claim to establish the liability.

e.     <u>Releases.</u>  The Ross Parties agree to release and forever discharge PMB and its employees of and from claims and actions, whether known or unknown, arising to or relating to the global settlement of the Obligations. PMB agrees to release and forever discharge the Ross Parties and their employees of and from claims and actions, whether known or unknown, arising to or relating to the global settlement of the Obligations.

f.     <u>Chapter 11 Plan.</u>  Rossco Holdings and Ross will obtain confirmation of their chapter 11 plans within a reasonable period of time.

g.     <u>Books and Records/ Access.</u>  Beginning on October 21, 2010, the Ross Parties will provide PMB with full access to, and make available for copying certain books and records in connection with the Colony Apartments and the (Piuma)

---

[2] While this summary of the principal terms of the Settlement Agreement is intended to be accurate, in the event of any discrepancies between the terms of the Settlement Agreement and this summary, the terms of the Settlement Agreement control.

LA:280797.5

Calabasas, CA Lots.

h.  <u>Stand Down</u>.  Provided that the Court rules on the Motion before November 16, 2010, PMB will not pursue any Bankruptcy Rule 2004 examination or motion to appoint a trustee in either the Ross or Debtor Affiliate cases.  In the event the Court does not approve the Motion, PMB may continue to pursue its Rule 2004 examinations and motions to appoint a trustee in the Ross and Debtor Affiliate cases.  Ross may not seek to extend the existing deadlines on the Rule 2004 examinations, which are currently required to take place on or before December 15, 2010.

## V.

### RULE 9019 BASIS FOR RELIEF

14.  Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that the Court may approve a compromise or settlement: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) ("in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts").

15.  For a compromise to be approved, the proposed compromise must be fair and equitable. TMT Trailer, 390 U.S. at 424.  In determining the fairness and equity of a compromise, courts have considered the following factors: (a) the probability of ultimate success should the claims be litigated; (b) the difficulty, if any, to be encountered in collection; (c) the complexity, expense and likely duration of such litigation; and (d) the paramount interests of creditors and a proper deference to their reasonable views. In re A&C Properties, 784 F.2d 1377, 1382 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986).

16.  In ruling on a proposed compromise, however, the Court should not substitute its own judgment for that of the trustee or debtor in possession. See In re Carla Leather, Inc., 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 765 (S.D. N.Y. 1985).  Nor is the Court required to determine whether the settlement was the best that the trustee could have obtained. See In re W.T. Grant, 699 F.2d 599, 608, 613 (2d Cir. 1982), cert. denied, 464 U.S. 822, 104 S. Ct. 89, 79 L.Ed.2d 97 (1983).  Rather, the Court should "canvass the issues and see whether the settlement

'fall[s] below the lowest point in the range of reasonableness.'" Id. at 608; In re Bell & Beckwith, 87 B.R. 472, 474 (N.D. Ohio 1987).

**B.    The Settlement Meets the Standards for Approval Under Bankruptcy Rule 9019**

17.    The Settlement should be approved under the applicable statutory and decisional standards. It is the product of extensive, arms-length negotiations among the parties. It provides for the release of PMB's liens and, more importantly, the pre-arranged capping of PMB's single Deficiency Claim against Ross and Rossco Holdings. In addition, the Settlement allows Ross, Colony, Rossco Holdings, and Monte Nido Estates the opportunity to seek to complete 1031 exchanges that may significantly reduce potential tax claims against their estates, improving the combined debtors''s prospects for reorganizing and paying the allowed unsecured claims of creditors in full. Ross Decl., Paragraph 10.

18.    Further, the Settlement eliminates the potential for any PMB claims against Colony, Rossco Holdings, Monte Nido, or WM Properties (except as disclosed in the Settlement Agreement), leaving any potential other assets, including litigation claims, if any, for the benefit of their unsecured creditors. Finally, the Settlement also seeks to consensually resolve all other the ongoing disputes among the parties, including but not limited to PMB's pending motions to appoint a trustee that were filed in the Texas Bankruptcy cases, as PMB will no longer be involved in the bankruptcy cases to any significant degree. This consensual resolution will thus allow the Debtors to cap their losses, eliminate further expense, and focus their resources on maximizing the value of the equity that remains in their other assets. Ross Decl., Paragraph 11. As applied here, the TMT Trailer factors support this Court's approval of the Settlement as in the best interest of the Debtors and their creditors. Ross submits that the Settlement should be approved for each of the following reasons:

19.    *Probability of Success*. The Ross Parties believe that in the absence of the Settlement Agreement, PMB ultimately may prevail on, among other things, obtaining relief from the automatic stay to allow it to foreclose on the (Piuma) Calabasas, CA Lots and Colony Apartments.

8

20.     In particular, Colony is a single asset real estate debtor who may not be able to generate cash sufficient to pay the contractual interest due under the note. Ross Decl., Paragraph 19. To the extent Colony cannot file a confirmable chapter 11 plan, Colony's failure to pay contractual interest would lead to relief from stay under 11 U.S.C. § 362(d)(3).   Finally, Colony would have funds remaining in its bank account, and certain accounts receivable, remaining after the transfer to pay its administrative, and ongoing, bills as they become due. This is because PMB is only receiving the real property and not the cash and cash equivalents. Ross Decl., Paragraph 12.

21.     Monte Nido, which holds raw land and does not generate any cash, is a singularly unattractive asset for the likes of a Debtor in today's economic environment. Trading the asset for a release, from Monte Nido's point of view, and a cap on contingent liability from Rossco Holdings' and the individual estate's point of view, is an exercise in good business judgment. Ross Decl., Paragraph 13.

22.     If the settlement were not approved then the continued pendency of the existing PMB Motions for relief from stay, and a trustee, would not benefit the Debtors. The elimination of future litigation is a benefit that cannot be overstated here. Ross Decl., Paragraph 14.

23.     Under the circumstances, the proposed Settlement is fair and reasonable, as it approximates the parties' reasonable estimation of risks associated with their respective claims and defenses.

24.     *Complexity of Litigation; Related Expense.* PMB holds many claims. Some are complex and some are not, but most should involve disputes over values of real property that may be complex and will be expensive. Further, to the extent the Debtors seek to retain the real property collateral, the valuation fights will be very expensive because the Debtors will need to provide evidence of value in connection with any of their chapter 11 plans. The Settlement eliminates this expense. It will conserve the Debtors' resources, financial and otherwise, and avoid the attendant cost, delay and uncertainty associated with litigation.

25.     *Interest of Creditors.* In addition to the benefits discussed above, the Settlement transmutes the currently unknown deficiency claims of PMB against the Debtors to the allowed (and final) PMB's Deficiency Claim against Ross and Rossco Holdings in an amount that

9

1  should likely be less than any actual deficiency claim that would have resulted (under the loan

2  documents PMB is entitled to among other things, late charges and attorneys fees and Ross does not

3  believe that the collateral fully secures PMB's claims). Ross Decl., Paragraph 15.

4        26.        Thus, additional funds should be freed up for the benefit of all other creditors.

5  In addition, the Settlement will lead to PMB's release of its lien on the Santa Barbara Property,

6  freeing up additional value. Finally, creditors will benefit from the reduced administrative costs as

7  certain Debtors will have a reduced pool of general unsecured claims while others will have an exact

8  claim amount from PMB to plan for their claims administration.

9        27.        Having analyzed and weighed the above factors, the Ross Parties believe the

10  negotiated Settlement Agreement — achieved after good-faith, arm's length negotiations — is fair and

11  reasonable, and in the best interest of the estates.

12                                    **VI.**

13                                  **NOTICE**

14        28.        The Ross Parties will timely and properly serve copies of this Motion (with all

15  exhibits) on: (a) the office of the United States Trustee; (b) the Debtor's top 20 creditors; and (c)

16  each person or entity who has filed a request for special notice. Ross submits that such notice of this

17  Motion is sufficient and proper and that no further notice is necessary.

18        WHEREFORE, for the foregoing reasons the Ross Parties respectfully request that

19  the Court (a) enter an order, in substantially the form of order attached hereto as Exhibit 2, granting

20  this Motion and (b) granting such other relief as the Court deems just and appropriate under the

21  circumstances.

22  Dated: November 1, 2010

23                          KELLY, HART & HALLMAN, LLP

24

25                          By: _____

26  APPROVED:

27

28  _____
    Leonard M. Ross

                              10

LA:280797.5

should likely be less than any actual deficiency claim that would have resulted (under the loan documents PMB is entitled to among other things, late charges and attorneys fees and Ross does not believe that the collateral fully secures PMB's claims). Ross Decl., Paragraph 15.

26.        Thus, additional funds should be freed up for the benefit of all other creditors. In addition, the Settlement will lead to PMB's release of its lien on the Santa Barbara Property, freeing up additional value. Finally, creditors will benefit from the reduced administrative costs as certain Debtors will have a reduced pool of general unsecured claims while others will have an exact claim amount from PMB to plan for their claims administration.

27.        Having analyzed and weighed the above factors, the Ross Parties believe the negotiated Settlement Agreement – achieved after good-faith, arm's length negotiations – is fair and reasonable, and in the best interest of the estates.

## VI.

### NOTICE

28.        The Ross Parties will timely and properly serve copies of this Motion (with all exhibits) on: (a) the office of the United States Trustee; (b) the Debtor's top 20 creditors; and (c) each person or entity who has filed a request for special notice. Ross submits that such notice of this Motion is sufficient and proper and that no further notice is necessary.

WHEREFORE, for the foregoing reasons the Ross Parties respectfully request that the Court (a) enter an order, in substantially the form of order attached hereto as Exhibit 2, granting this Motion and (b) granting such other relief as the Court deems just and appropriate under the circumstances.

Dated: November 1, 2010

KELLY, HART & HALLMAN, LLP

By: _____

APPROVED:

_____
Leonard M. Ross

10

LA:280797.5

1

2                      **DECLARATION OF LEONARD M. ROSS**

3        I,  Leonard M. Ross, being first duly sworn, declare and allege as follows:

4        1.        I am a representative of the herein Debtor.  I have personal knowledge of the facts set

5

6    forth herein and if called as a witness I could, and would, so competently testify hereto.

7        2.        Ross, individually and as the Trustee of the Leonard M. Ross Revocable Trust (the

8    "Trust") is the ultimate owner of, and controls, multiple businesses that, among other things, own,

9    operate, and/or develop real property.  PMB is a secured lender to some of them, holding allegedly

10   perfected liens in certain real property.  Ross, the Trust, and Rossco Holdings are claimed to be

11   guarantors, or direct obligors, under each of PMB's loans.

12       3.        PMB, Ross, and certain of Ross's businesses have been involved in multiple disputes

13

14   concerning defaults under the loans.  The Settlement seeks to resolve all of those ongoing disputes

15   on a final basis.  The disputes have been costly to all of the parties.  Since the businesses defaulted

16   on their obligations, PMB has incurred significant losses in the form of missed payments and has

17   incurred significant costs in exercising its remedies. The  Ross Parties, in turn, have  incurred great

18   expense in defending against PMB's actions and ultimately in seeking bankruptcy protection for four

19
     of the businesses (i.e., Rossco Holdings, Colony, WM Properties, and Monte Nido Estates).

20       4.        On September 15, 2010 (the "Petition Date"), Ross filed a voluntary petition (the

21
     "Petition") seeking protection from his creditors under chapter 11 of the Bankruptcy Code.

22

23       5.        Ross's individual petition followed the petitions of certain business entities that are

24   owned and/or controlled by Ross and the Trust, including four that are parties to the Settlement, who

25   are CLI, Monte Nido Estates, WM Properties, and Rossco Holdings (collectively the "Debtor

26   Affiliates").  Between July 27 and August 2, 2010 each of the Debtor Affiliates filed chapter 11

27   bankruptcy proceedings before the United States District Court for the Western District of Texas

28

                                             11

(Waco Division) (the "Texas Court"). By order entered on October 12, 2010, the Texas Court transferred the venue for these cases to the Central District of California, Los Angeles Division.

6.    The outstanding principal amount claimed by PMB the various outstanding obligations to PMB as of the Debtor Affiliates' bankruptcy petition dates is approximately $15.3 million.

7.    The collateral securing the obligations is as follows:

a.    All of the real property and rents of Colony, including the Colony Apartments in College Station, TX (the "Colony Apartments"). The Colony Apartments are encumbered by a second lien deed of trust and assignment of rents in favor of PMB. PMB claims that the amount due to it under the note secured by the second deed of trust is approximately $6.6 million, including principal, interest, late charges, and fees and costs as of October 25, 2010. It should also be noted that there exists a first lien deed of trust which secures an obligation in favor of Propel Financial Services, LLC in the approximate amount of $130,000 for the payment of property taxes that came due in 2009. There is further another $125,000, plus or minus, that will come due for 2010. The total secured indebtedness and potential tax claims against the Colony Apartments is therefore around $6.7 million (with a claimed per diem of $2,139.77). The Debtor does not believe that the present value of the property exceeds $6.7 million (net of commissions, costs, title fees and escrow fees).

b.    Certain real property, consisting of 20 vacant lots, owned by Ross, Monte Nido Homes and Monte Nido Estates, located on the north and south side of Piuma Road, East of Cold Canyon Road, Calabasas CA 91302 (the "(Piuma) Calabasas, CA Lots"). The (Piuma) Calabasas, CA Lots are encumbered by first and second lien deeds of trust in favor of PMB, Monte Nido Estates' only significant creditor. Ross Decl., Paragraph 10. The claimed liens are approximately $9 million; the value of the 20 lots is around $5 million, according to the appraisal attached as

12

LA:280797.5

1    Exhibit "3". Since the individual estate executed a guarantee, there is an approximate $4 million

2    contingent guarantee claim that could be placed against the individual estate.

3

4        c.    Certain real property owned by Rossco MP, commonly known as 633 Para Grande

5    Lane, Santa Barbara, CA 93108 (the "Santa Barbara Property"). The Santa Barbara Property is

6    encumbered by a second lien deed of trust in favor of PMB. It is disputed as to whether or not the

7    lien on the Santa Barbara Property should already have been reconveyed pursuant to PMB's

8    foreclosure of certain property in Texas occupied by a Travelodge.

9

10       d.    Certain real property owned by WM Properties, commonly known as 702 S. Fort

11   Hood Street, Killen, Texas 76541, Bell County, Texas (the "Verizon Property"). The Verizon

12   property is encumbered by a first deed of trust and an assignment of rents in favor of PMB in the

13   amount of approximately $250,000, and a second deed of trust in the amount of approximately

14   $300,000 in favor of RFF Family Partnership, L.P.. The value of the real property is somewhat in

15   excess of the two debts, but not to any great extent.

16

17       8.    Ross does not presently believe that the collateral fully secures PMB's claims and

18   that PMB will likely have a significant deficiency claim in excess of $750,000 (and perhaps as much

19   as $4 million or more).

20

21       9.    In addition, the Debtor requests that the Order contain the following additional

22   language in order to comply with the tax-free exchange provisions of the Agreement: "The Court

23   finds that, upon the conveyance to PMB of the Colony Apartments, and the (Piuma) Calabasas CA

24   lots, all indebtedness and obligations deriving from or relating to those properties which may

25   otherwise be owing to PMB shall be deemed satisfied and discharged in full." The reason for the

26   additional provision relates to the fact that it is important that the income from the discharge of

27   indebtedness exception under the Internal Revenue Code relating to the PMB (Piuma) Calabasas,

28

13

LA:280797.5

1   CA Lots loans (which have a balance in excess of the fair market value of that property, i.e., the 20

2   Lots) is available to Debtors.   This finding, which is consistent with the release language of the

3   Settlement Agreement, is a necessary prerequisite. Nothing contained herein shall be deemed to

4   affect the continuing obligations set forth in the Settlement Agreement.

5

6        10.    The Settlement should be approved under the applicable statutory and decisional

7   standards. It is the product of extensive, arms-length negotiations among the parties.   It provides for

8   the release of PMB's liens and, more importantly, the pre-arranged capping of PMB's single

9   Deficiency Claim against Ross and Rossco Holdings.  In addition, the Settlement allows Ross,

10  Colony, Rossco Holdings, and Monte Nido Estates the opportunity to seek to complete 1031

11  exchanges that may significantly reduce potential tax claims against their estates, improving the

12  combined debtors''s prospects for reorganizing and paying the  allowed unsecured claims of

13  creditors in full..

14       11.    Further, the Settlement eliminates the potential for any PMB claims against Colony,

15  Rossco Holdings, Monte Nido, or WM Properties (except as disclosed in the Settlement Agreement),

16  leaving any potential other assets, including litigation claims, if any, for the benefit of their

17  unsecured creditors.  Finally, the Settlement also seeks to consensually resolve all other the ongoing

18  disputes among the parties, including but not limited to PMB's pending motions to appoint a trustee

19  that were filed in the Texas Bankruptcy cases, as PMB will no longer be involved in the bankruptcy

20  cases to any significant degree.  This consensual resolution will thus allow the Debtors to cap their

21  losses, eliminate further expense, and focus their resources on maximizing the value of the equity

22  that remains in their other assets.

23       12.    In particular, Colony is a single asset real estate debtor who may not be able to

24  generate cash sufficient to pay the contractual interest due under the note.  To the extent Colony

25  cannot file a confirmable chapter 11 plan, Colony's failure to pay contractual interest would lead to

26  relief from stay under 11 U.S.C. § 362(d)(3).  Finally, Colony would have  funds remaining in its

27  bank account, and certain accounts receivable, remaining after the transfer to pay its administrative,

28

14

LA:280797.5

and ongoing, bills as they become due.  This is because PMB is only receiving the real property and not the cash and cash equivalents.

13.   Monte Nido, which holds raw land and does not generate any cash, is a singularly unattractive asset for the likes of a Debtor in today's economic environment.  Trading the asset for a release, from Monte Nido's point of view, and a cap on contingent liability from Rossco Holdings' and the individual estate's point of view, is an exercise in good business judgment.

14.   If the settlement were not approved then the continued pendency of the existing PMB Motions for relief from stay, and a trustee, would not benefit the Debtors.  The elimination of future litigation is a benefit that cannot be overstated here.

15.   In addition to the benefits discussed above, the Settlement transmutes the currently unknown deficiency claims of PMB against the Debtors to the allowed (and final) PMB's Deficiency Claim against Ross and Rossco Holdings in an amount that should likely be less than any actual deficiency claim that would have resulted (under the loan documents PMB is entitled to among other things, late charges and attorneys fees and Ross does not believe that the collateral fully secures PMB's claims).

At Beverly Hills, California this 29th day of October, 2010.

_____
Leonard Ross

LA:280797.5

Case 2:10-bk-55925-VZ  Doc 9  Filed 11/02/10  Entered 11/03/10 10:44:53  Desc
02-Nov-2010 02:35 PM KellyHart&Hallman 817-878-9280  Main Document  Page 17 of 22

7/11

## CERTIFICATE OF SERVCE

The undersigned, hereby certifies that on this 2nd day of November 2010, he has served the following document to parties on the attached service list:

Motion of Colony Lodging, Inc. for Order Approving Compromise with Pacific Mercantile Bank Pursuant to Federal Rule Bankruptcy of Procedure 9019; Declaration of Leonard Ross.

Respectfully submitted,

Michael A. McConnell
Texas Bar No. 13447300
Clay M. Taylor
Texas Bar No. 24033261
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:    817/332-2500
Telecopy:     817/878-9280

Label Matrix for local noticing
0973-2
Case 2:10-bk-55925-VZ
Central District Of California
Los Angeles
Tue Nov 2 11:55:56 PDT 2010

Colony Lodging, Inc
1011 1/2 North Beverly Drive
Beverly Hills, CA 90210-2328

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

A+ Glass and Mirror
908 Harvey Mitchell Pkwy
College Station, TX 77840

ANSI-INFORM Global Solutions
PO Box 1450 NW 5421
Minneapolis, MN 55485-1450

AT&T
PO Box 6463
Carol Stream, IL 60197-6463

ATMOS ENERGY CORPORATION
ATTN: BANKRUPTCY GROUP
PO BOX 650205
DALLAS TX 75265-0205

Advanced Carpet Cleaning
PO Box 10300
College Station, TX 77842-0300

Atmos Energy
PO Box 790311
St Louis, MO 63179-0311

Back 2 New
PO Box 4533
Bryan, TX 77805-4533

Brazos County Tax Assessor Collector
300 E William J Bryan Pkwy
Bryan, TX 77803-5336

Bryan College Station Apt Assoc
1808 Barak
Bryan, TX 77802-3448

Bryan-College Station Eagle
PO Box 3000
Bryan, TX 77805-3000

College Station Utilities
PO Box 10230
College Station, TX 77842-0230

County of Brazos
c/o Lee Gordon
P.O. Box 1269
Round Rock, TX 78680-1269

Davis Fire Equipment
1140 Finfeather Rd
Bryan, TX 77803-3823

Dowling Electric, Inc.
PO Box 4409
College Station, TX 77844-4409

Grainger
201 Freedom Dr
Roanoke, TX 76262-3320

H & A Plumbing
4562 Rock Prairie Rd W
College Station, TX 77845-5021

HD Supply
PO Box 509058
San Diego, CA 92150-9058

Illustratus
8455 Lenexa Dr
Lenexa, KS 66214-1550

Integrity Refinishing, Inc.
PO Box 38
Coupland, TX 78615-0038

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Kings III of America
751 Canyon Dr Ste 109
Coppell, TX 75019-3857

Leonard M Ross
1009 N Beverly Drive
Beverly Hills, CA 90210-2328

Leonard M Ross Revocable Trust
1011 1/2 N Beverly Dr
Beverly Hills, CA 90210-2328

Lowe's
PO Box 530954
Atlanta, GA 30353-0954

Michael A. McConnell
C. Josh Osborne
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102-3194

Network Communications, Inc.
PO Box 935080
Atlanta, GA 31193-5000

Pacific Mercantile Bancorp
c/o Munsch Hart Kopf & Harr, PC
Attn: Patty Tomasco
401 Congress Avenue, Suite 3050
Austin, TX 78701-4506

Pacific Merchantile Bank
9720 Wilshire Blvd
Beverly Hills, CA 90212-2021

Propel Financial Services, L.L.C.
c/o John Lane & Associates
8526 N. New Braunfels
San Antonio, Texas 78217-6304

Propel Financial Services, LLC
PO Box 100350
San Antonio, TX 78201-1650

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Rossco Holdings, Inc.
1011 1/2 N Beverly Dr
Beverly Hills, CA 90210-2326

Ruffino Lawn Maintenance
PO Box 2603
Bryan, TX 77805-2603

Sherwin Williams
3108 Texas Ave
College Station, TX 77845-5050

Sudden Link
PO Box 660365
Dallas, TX 75266-0365

Swoboda Pest Control
100 W. Brookside Dirve, Ste 9
Bryan, TX 77801-3605

Texas Workforce Commission
Regulatory Integrity Division - SAU
Room 556
101 E. 15th Street
Austin, TX 78778-0001

US Attorney
IRS
601 NW Loop 410
San Antonio, TX 78216-5510

US Attorney General
Dept of Justice
950 Pennsylvania Ave NW
Washington, DC 20530-0009

United Roofing and Sheetmetal, Inc.
PO Box 4424
Bryan, TX 77805-4424

United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017-5524

Ronald E Pearson
2109 Bird Creek Terrace
Temple, TX 76502-1083

# Exhibit A

**MICHAEL A. MCCONNELL**
Kelly, Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: ((817) 878-3566
Facsimile: (817) 878-9766

General Counsel for Colony Lodging, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | **Case No. 02:10-bk-55925-VZ** |
| Colony Lodging, Inc. | Chapter 11 |
| Debtor. | **ORDER GRANTING MOTION OF COLONY LODGING, INC. FOR ORDER APPROVING COMPROMISE WITH PACIFIC MERCANTILE BANK PURSUANT TO FEDERAL RULE BANKRUPTCY OF PROCEDURE 9019** |
| | Judge: Hon. Vincent P. Zurzolo |
| | Courtroom 1368 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |
| | Date: November 23, 2010 |
| | Time: 11:00 a.m. |
| | Place: Courtroom 1368 |

LA:280856.1

On October ___, 2010, Colony Lodging, Inc. ("Debtor") filed the *Motion of Colony Lodging, Inc. for Order Approving Compromise with Pacific Mercantile Bank Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion")[1]. The Motion came before the Court on _____, 2010. Appearances of counsel were as noted in the record of the Court.

The Court having reviewed the Motion, the Settlement described in the Motion, the Settlement Agreement, and the other pleadings and papers filed in this case; having determined that adequate notice has been given under the circumstances, and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED:**

1.     The Motion is granted in its entirety;

2.     The Settlement and Settlement Agreement are approved in all respects;

3.     The Court finds that the proposed Settlement is fair and reasonable;

4.     The Court has considered and hereby overrules any objections to the proposed Settlement;

5.     The Ross Parties are authorized and directed to enter into the Settlement Agreement and to perform any and all obligations contemplated thereby promptly upon entry of this Order; and

6.     Without affecting the finality of this Order in any way, this Court retains continuing jurisdiction (a) with respect to all matters arising from or related to the implementation of this Order and (b) to construe, enforce and administer the Settlement Agreement.

7.     Subject to the terms of the Settlement Agreement, the Court finds that, upon the conveyance to PMB of the Colony Apartments, and the (Piuma) Calabasas CA lots, all indebtedness and obligations deriving from or relating to those properties which may otherwise be owing to PMB shall be deemed satisfied and discharged in full.

### # #

---

[1] Capitalized terms used but not defined herein will have the same meanings ascribed to them in the Motion or in the Settlement Agreement that is the subject of the Motion.

2

LA:280856.1